UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TIMOTHY S. CONDRONE,           )
                               )
            Plaintiff,         )
                               )
                               )
v.                             )        No. 3:14-CV-373
                               )        (SHIRLEY)
CAROLYN W. COLVIN,             )
Acting Commissioner of Social Security,  )
                               )
            Defendant.         )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to the Notice of Consent by both parties for

United States Magistrate jurisdiction [Doc. 19] and the District Court's Order of Reference [Doc.

20] for final disposition of Plaintiff's Motion for Judgment on the Pleadings and Memorandum

in Support [Docs. 15 & 16] and Defendant's Motion for Summary Judgment and Memorandum

in Support [Docs. 17 & 18]. Plaintiff Timothy S. Condrone seeks judicial review of the decision

of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W.

Colvin, Acting Commissioner of Social Security ("the Commissioner").

On May 15, 2012, Plaintiff protectively an application for disability insurance benefits

("DIB") and supplemental security income ("SSI") with an alleged onset date of January 1, 2010.

[Tr. 150-58; 207]. The Social Security Administration denied Plaintiff's application initially and

upon reconsideration. [Tr. 64-67; 73-76]. Plaintiff timely filed a request for a hearing, and he

appeared before Administrative Law Judge, Andrea L. Wirth, on March 20, 2014 in Knoxville,

Tennessee. [Tr. 77-78; 32]. The ALJ issued an unfavorable decision on May 8, 2014. [Tr. 9-

27]. Plaintiff filed his appeal of the decision, which the Appeals Council declined to review on

June 27, 2014.  [Tr. 6-8; 1-5].

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on August 6, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act.  [Doc. 2].  The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq.*).
>
> 3. The claimant has the following combination of severe impairments: asthma and mild to moderate degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally perform postural activities except he can never climb ladders, ropes and scaffolds. He should not work around exposed heights or moving mechanical parts, and he should avoid concentrated exposure to pulmonary irritants.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on October 25, 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the

2

alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-21].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. To qualify for DIB and SSI benefits, plaintiff must file an application and pass the five-step evaluation process outlined below. 20 C.F.R. § 404.1520. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a).  A claimant will only be considered disability if:

> [H]is physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); see also 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  Id.  The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work

available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (internal citations omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor

5

decide questions of credibility." <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984) (citing <u>Myers v. Richardson</u>, 471 F.2d 1265 (6th Cir. 1972).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. <u>See</u> <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "'absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses.'" <u>Wilson</u>, 378 F.3d at 546-47 (emphasis omitted) (quoting <u>Connor v. U.S. Civil Serv. Comm'n</u>, 721 F.2d 1054, 1056 (6th Cir. 1983). Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. <u>See</u> <u>id.</u> at 547.

On review, the plaintiff "bears the burden of proving his entitlement to benefits." <u>Boyes v. Sec'y. of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   EVIDENCE

### A.   *Medical Evidence*

On May 15, 2012, Plaintiff protectively filed an application for DIB and SSI with an alleged onset date of January 1, 2010. [Tr. 150-58; 207]. Plaintiff was 41 years old at the time

6

of his application. [Tr. 150]. He received a GED in 1991 and reported past relevant work as a gas station clerk, car wash manager, cook, and laborer. [Doc. 188]. Plaintiff stated that he ceased working on February 11, 2012 due to degenerative disc disease of the lower back, fractured vertebra of the mid-back, chronic obstructive pulmonary disorder, asthma, sleep apnea, allergies, high cholesterol, and seizures. [Doc. 187].

Plaintiff began seeing Dr. Gregory Brewer in September 2010 for generalized chest pain. [Tr. 266]. He was referred to Dr. Brewer from Dr. Foote, who treated Plaintiff for his allergies in 2010. [See Tr. 266; 275]. An EKG performed in Dr. Brewer's office was normal, and Plaintiff was assessed with unspecified chest pain. [Tr. 268]. Dr. Brewer ordered a Stress Echocardiography for further analysis. [Id.]. The test was performed on September 29, 2010, and the results were "negative for ischemia based on EKG, symptoms, and stress echocardiographic criteria." [Tr. 269].

Plaintiff received treatment for chronic back pain, allergies, mild hemorrhoids, an appendectomy, and various other ailments at Roane Medical Center from 2010 through 2012. [Tr. 283-344]. A MRI of Plaintiff's lumbar spine was performed on July 5, 2011. [Tr. 322]. A compression fracture was noted and the results showed "apparent old deformity of L2" and "degenerative disk disease at multiple disks with posterior bulging of the L5-S1 disk." [Id.]. On March 2, 2012, Plaintiff received physical therapy at Patricia Neal Outpatient Center for pain in his mid and low back. [Tr. 312]. He stated that he was unable to work because of increased pain and need for pain medication. [Tr. 313]. He ambulated without an assistive device and was assessed with "increased muscle spasm in thoracolumbar paraspinals and left lower trap." [Id.]. His cervical range of motion was normal, "lumbar range of motion forward bending was 30 degrees, backward bending 15 degrees, [and] straight leg raise was 70 degrees." [Id.].

7

On March 19, 2012, he was admitted to the Roane Medical Center emergency room after vomiting and "[a]pparently he fell and fell asleep." [Tr. 303]. A CT scan showed "no acute intracranial abnormality" and he was positive for "benzo and opiates." [Id.; see also Tr. 307]. He was diagnosed with a possible drug overdose, back pain, vomiting, change in mental status, and salicylate toxicity. [Tr. 304].

On September 13, 2012, Plaintiff returned to Roane Medical Center complaining of upper quadrant pain and was assessed with symptoms akin to gallbladder disease. [Tr. 486-87]. An abdominal scan showed "either small polyps or sludge in the gallbladder, liver enlargement, and steatosis." [Tr. 487]. Dr. Matthew D. Bridges recommended a "[l]aparoscopic cholecystectomy with intraoperative cholangiogram, possible liver biopsy." [Id.]. The procedure was performed on September 13, 2012 and the intraoperative cholangiogram showed "no evidence of retained gallstone." [Tr. 488]. His postoperative diagnosis was "gallbladder sludge with right upper quadrant pain and fatty liver." [Tr. 489]. Plaintiff's gallbladder was removed and he was discharged with instructions to follow up in seven to ten days. [Tr. 490].

Plaintiff received treatment for back pain at Ambulatory Care Center of Roane County from 2011 through 2012. [Tr. 345-450]. On March 11, 2012, Plaintiff reported to the Roane County Emergency Room for a skin rash after cutting down a tree. [Tr. 325]. On April 9, 2012, Plaintiff presented for a follow up visit regarding low back pain. [Tr. 346]. He reported that his "symptoms were stable since last visit. Pain without medication is 8 on a scale of 0-10[.] Pain with medication is 3 on a scale of 0-10[.] Pain medications allow patient to increase mobility [and] perform [activities of daily living]." [Id.]. His gait was normal with "tenderness in left trapezius along thoracic spine[,]" and he was referred to physical therapy. [Tr. 352-53]. His prescriptions for Neurontin, Baclofen, and "Norco (Hydrocodone/Acetaminophen)" were

refilled. [Tr. 353]. He was originally prescribed Norco, Neurontin, and Zanaflex during his first visit on June 24, 2011. [Tr. 390]. On August 23, 2012, Plaintiff returned to Roane County Emergency Room for back pain after reportedly moving furniture and aggravating "an old injury." [Tr. 483]. A health summary dated February 11, 2013 noted Plaintiff's "current problems" as asthma, degenerative disc disease, low and mid back pain, essential hypercholesterolemia, gastroesophageal reflux disease, and "[p]atient visit for long term (current) drug use[.]" [Tr. 392].

Dr. Eva Misra conducted a disability evaluation on July 27, 2012. [Tr. 451-54]. She assessed Plaintiff with chronic back pain with "[f]ull range of motion universally except the lumbar spine flexion is 70 degrees, extension is 10 degrees, right lateral and left lateral flexion is 10 degrees. Rest of range of motion, muscle condition and strength is normal." [Tr. 452]. Dr. Misra found that:

> The patient retains the capacity to occasionally lift and carry including upward pulling for up to one-third of an eight-hour workday to a maximum of 20 lbs. He could frequently lift or carry from one-third to two-thirds of an eight-hour workday to a maximum of 10 lbs. He could stand or walk with normal breaks for a total of six hours in an eight-hour workday and sit without restrictions.

[Tr. 453].

Dr. Charles Settle submitted a Physical Residual Functional Capacity Assessment on August 15, 2012. [Tr. 455-63]. He found that Plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, sit, stand, or walk for about 6 hours out of an 8-hour workday, and was unlimited in his ability to push or pull. [Tr. 456]. He assessed that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, but he could never climb ladders or scaffolds. [Tr. 457]. He found Plaintiff was only partially credible in regards to

9

the severity of his symptoms based on the objective medical evidence and Plaintiff's daily activities, which included self-care, food preparation, household chores, driving, grocery shopping, playing music, socializing with family and friends, reading, and watching television. [Tr. 460]. Dr. Joseph Curtsinger submitted a case analysis on December 30, 2012 in which he affirmed Dr. Settle's assessment. [Tr. 555]. He noted that any additional evidence did "not indicate significant worsening of [Plaintiff's] condition. [Id.].

Plaintiff sought treatment from Dr. Bhavana Vora from March through October 2012. [Tr. 493-537]. In May 2012, Dr. Vora noted Plaintiff's degenerative disc disease was improving and Plaintiff reported a current pain level of two out of ten. [Tr. 515]. In August 2012, Plaintiff reported trouble sleeping due to his back pain and Dr. Vora noted that his range of motion had decreased. [Tr. 501-03]. By September 2012, Plaintiff reported that he was again "doing well[,]" and on October 26, 2012, Dr. Vora found that his gait and station were normal with a limited range of motion in his lumbar spine. [Tr. 496-99]. Dr. Vora noted that Plaintiff had been taking opiates and high risk medication for an extended amount of time, referred Plaintiff to physical therapy, and prescribed hydrocodone with acetaminophen. [Tr. 498]. On October 30, 2012, Dr. Vora again noted that Plaintiff's gait and station were normal. [Tr. 494].

Dr. Vora submitted a medical source statement on December 19, 2012 diagnosing chronic low back pain as Plaintiff's main impairment. [Tr. 539-42]. He assessed that Plaintiff would be unable to reliably attend a normal work week without missing more than two days a month. [Tr. 539]. He stated that Plaintiff could sit and stand for up to 1-2 hours, walk for up 1 hour, lift or carry up to 10 pounds occasionally, and could never lift more than 11 pounds. [Id.]. Dr. Vora further assessed that Plaintiff could occasionally bend, stoop, squat, kneel, climb stairs, and walk on uneven surfaces, never crawl, frequently reach above his shoulders, and

10

continuously use right and left hands for fine manipulation. [Tr. 540]. Dr. Vora listed Plaintiff's pain level as moderate with low back pain, worse at night, for four to five hours a day. [Tr. 541]. Finally, Dr. Vora stated that Plaintiff would likely need more than 3 breaks during an 8-hour workday and that his restrictions would last more than 12 months. [Tr. 542].

Plaintiff reported to Horizon Emergency Care on December 29, 2013 for back pain. [Tr. 721]. He stated that "he helped his friend digging a ditch but had no pain afterwards. He state[d] that the pain now radiates down his left leg." [Id.].

Plaintiff received bilateral sacroiliac joint injections in October 2011 and again in February 2014. [Tr. 658; 660]. He received similar injections for low back pain and lumbar spondylosis with joint injections at L2-L3, L3-L4, and L4-L5 in 2014. [Tr. 659]. Plaintiff followed up on these injections and medication at Synergy Health Systems during 2013 and 2014. [Tr. 662-74]. In April 2014, Plaintiff had another MRI of his lumbar spine and the results showed "[s]table small left paracentral disc protrusion and left lateral recess stenosis." [Tr. 745]. He had "[n]o acute bone abnormalities" but was positive for degenerative disc disease, "most pronounced at L2-L3, L3-L4, and L5-S1." [Id.].

### B. Other Evidence

The ALJ conducted a hearing on March 20, 2014, in which the Plaintiff and Vocational Expert ("VE"), Jane Hall, testified. [Tr. 32-59]. The ALJ issued an unfavorable decision on May 8, 2014. [Tr. 9-27]. The ALJ assessed Plaintiff with a RFC to perform light work, [Tr. 15], assigning little weight to Dr. Vora's medical source statement, finding his opinion was not consistent with "a pain rating of moderate, as [he] stated, or with [his] own treatment notes that show that claimant reported a low pain level during office visits." [Tr. 19]. She further found Dr. Vora's assessment of Plaintiff's functional abilities to be inconsistent with Plaintiff's daily

11

activities and his alleged onset date. [Id.]. The ALJ assigned great weight to examining physician, Dr. Misra, finding her assessment consistent with her examination report, Plaintiff's other treatment records, and the diagnostic test results. [Id.]. The ALJ also assigned great weight to state agency medical consultants, Dr. Settle and Dr. Curtsinger. [Id.]. She found their assessments were consistent with the diagnostic tests, Plaintiff's daily activities, and treatment records. [Id.].

## V.  POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ failed to properly weigh the medical evidence. Specifically, the Plaintiff contends that the ALJ erred in not giving Plaintiff's treating physician, Dr. Vora, controlling weight. Further, the Plaintiff alleges that substantial evidence does not support the ALJ's decision, that any error on behalf of the ALJ is not harmless, and that the ALJ failed to adhere to agency procedure in articulating the basis for her opinion.

The Commissioner answers that substantial evidence supports the ALJ's decision to grant Dr. Vora little weight and that she properly relied on Drs. Misra, Settle, and Curtslinger in discounting Dr. Vora's opinion. The Commissioner draws the Court's attention to the applicable dates of Plaintiff's insured status and disability in regards to both his DIB and SSI application. The Commissioner argues that Plaintiff failed to prove he was disabled before the date he was last insured or at any other time relevant to his application for SSI benefits.

## VI.  ANALYSIS

The Court will address each of the issues presented by the Parties in turn.

## A.  Consideration of Medical Opinions and the Treating Physician Rule

The Court finds that the ALJ properly considered the medical evidence, including the opinion of treating physician, Dr. Vora. Under the Social Security Act and its implementing

12

regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled.  20 C.F.R. § 404.1527(b).

An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians.  See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").  Where an opinion does not garner controlling weight, the appropriate weight to be given will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight assigned.  20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  A decision denying benefits shall include "specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge."  Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d

13

968, 973 (6th Cir. 1984). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

Even if the ALJ fails to properly apply the treating physician rule, if substantial evidence exists to support the ALJ's determination of the claimant's RFC based on other relevant evidence, such an error will be found harmless. See Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804-05 (6th Cir. 2011) (holding that the regulations require only "good reasons" for the weight assigned a treating physician, "not an exhaustive factor-by-factor analysis," and finding that the ALJ's failure to consider the factors set forth in 20 C.F.R. § 404.1527(d)(2) was harmless error because "the ALJ cited the opinion's inconsistency with the objective medical evidence, [Plaintiff's] conservative treatment and daily activities, and the assessments of [Plaintiff's] other physicians. Procedurally, the regulations require no more."); Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Here, there is substantial evidence to uphold the ALJ's determination that Plaintiff has

the residual functional capacity to perform light work. [See. Tr. 25]. Even though the ALJ gave little weight to Plaintiff's treating physician, the record considered in its entirety supports the ALJ's decision. The ALJ assigned little weight to Dr. Vora's medical source statement, finding his opinion was inconsistent with the doctor's own treatment records, Plaintiff's daily activities, Plaintiff's alleged onset date, and the rest of Plaintiff's medical record. [Tr. 19]. In formulating this decision, the ALJ relied on Plaintiff's treatment records, daily activities, and diagnostic test results. [Tr. 17]. The ALJ noted that none of Plaintiff's radiological tests have "shown spinal stenosis, arachnoiditis, or herniated disks, conditions one may expect to cause a disabling level of pain." [Id.]. The ALJ went on to consider Plaintiff's treatment records from Dr. Vora, specifically Dr. Vora's notes showing that Plaintiff "was in no acute distress[,]" that his gait and station were normal, and that he often reported a pain level of two on scale of ten. [Tr. 17-18]. The ALJ further considered Dr. Misra's examination report and "relatively benign" findings. [Tr. 18]. Finally, the ALJ considered Plaintiff's self-reported daily activities, finding them "inconsistent with the degree of pain and extent of limitation he has alleged." [Tr. 18]. The ALJ specifically noted that Plaintiff cut down a tree in March 2012, reported activities including grocery shopping, household chores, and riding a lawn mower in July 2012, moved furniture in August 2012, and dug a ditch in December 2013. [Id.].

The Court concurs in the ALJ's assessment and finds the weight assigned Dr. Vora to be supported by substantial evidence. Not only do Dr. Vora's own treatment records contradict the level of functional impairment reflected in his medical source statement, the entirety of the medical evidence reflects Plaintiff's ability to perform at least light work. Dr. Vora's most recent treatment records show that Plaintiff consistently reported that he was "doing well" and had normal gait and station. [See Tr. 494; 496-97; 499-500]. Drs. Misra, Settle and Curtsinger

15

concurred in Plaintiff's ability to lift up to twenty pounds and stand or walk for up to six hours out of an eight-hour workday, with normal breaks. [See Tr. 453; 456; 555]. Further, the MRI results did not reflect a disabling impairment. [See 322; 745]. Yet above all, the Court finds that Plaintiff's daily activities, such as cutting down trees, moving furniture, digging a ditch, grocery shopping, socializing with friends, preparing meals, and performing household chores, are wholly inconsistent with a disabling back condition. [See Tr. 325; 483; 460; 721]; see also Dyer v. Social Security Administration, No. 13-6024, 2014 WL 2609548, at *4 (6th Cir. June 11, 2014) (noting that plaintiff's daily activities of "personal hygiene and grooming, cooking, cleaning, laundry, driving, shopping, visiting with friends and family, caring for her ill mother, and taking care of her pet bird" constituted substantial evidence in support of a finding that a claimant is not disabled).

Plaintiff alleges that the ALJ did not fully adhere to the proper standards when weighing Plaintiff's treating physician records. The Court disagrees. The ALJ considered Dr. Vora's opinion in comparison with the entirety of Plaintiff's medical records and other factors which tended to support or contradict his opinion. [See Tr. 17-19]. The ALJ juxtaposed Plaintiff's treating physician records with his self-reported daily activities, non-treating physician records, and diagnostic test results, and based on that analysis, found Dr. Vora's medical source statement to be inconsistent with the record as a whole. [See Tr. 19]. The ALJ provided good and "specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record[,]" specifically citing to Plaintiff's self-reported daily activities and the opinions of non-treating medical sources. Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5. Based on this reasoning, the Court finds that the ALJ provided enough explanation to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

16

medical opinion and the reasons for the weight." Id.

Although the Plaintiff contends that the ALJ erred in not considering all of the factors set forth in 20 C.F.R. §§ 404.1527(c)(1-6) and 416.927(c)(1-6), specifically the length of treatment, frequency of examination, and the nature and extent of the treatment relationship, [Doc. 16 at 7], the Court is not so offended. An ALJ is under no obligation to address each and every factor set forth in 20 C.F.R. §§ 404.1527(c)(1-6) and 416.927(c)(1-6). As explained above, the ALJ need only provide "good reasons" for the weight assigned the treating physician. See Francis, 414 F. App'x at 804 ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... given to the treating source's opinion'—not an exhaustive factor-by-factor analysis.") (citing 20 C.F.R. § 404.1527(d)(2) (previous version, citation now found at 20 C.F.R. § 404.1527(c)(2)). The Court has already found that the ALJ provided good reasons for the weight assigned Dr. Vora and concurs in the ALJ's assessment. The ALJ explained thoroughly why Dr. Vora's opinion was discounted, and she did so by addressing several of the factors listed in 20 C.F.R. §§ 404.1527(c)(1-6) and 416.927(c)(1-6), specifically, the supportability, consistency, and other factors that contradicted the opinion, such as Plaintiff's medical history and treatment records, diagnostic test results, and daily activities. The agency requires no more and neither shall this Court. The Court finds that the ALJ adhered to agency procedure and committed no error in the weight assigned to Dr. Vora. Substantial evidence supports the ALJ's decision to grant Dr. Vora little weight and the RFC analysis as a whole.

## B. Plaintiff's Insured Status and Applicable Dates for SSI Benefits

Plaintiff's case also involves an issue of insured status. To be eligible for DIB, a claimant must show that he became disabled prior to the expiration of his disability insured

status.  [See Tr. 12]; Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990).  Plaintiff's insured status expired on March 31, 2014.  [Tr. 14].  Therefore, for the purposes of DIB, Plaintiff had to prove he was disabled during the period from January 1, 2010, which is the alleged onset date, through March 31, 2014.  [See Tr. 14; 150; 158].  As for Plaintiff's SSI claim, Plaintiff must establish that he was disabled during the time his application was pending, beginning on the filing date of May 15, 2012 through the date of the ALJ's decision on May 8, 2014.  [See Tr. 22]. Substantial evidence supports the ALJ's finding that Plaintiff was not disabled before his date last insured or from the date of Plaintiff's SSI application through the date of the ALJ's decision. [See id.].

## VII.  CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that Plaintiff's Motion For Judgment on the Pleadings **[Doc. 15]** be **DENIED,** and that the Commissioner's Motion for Summary Judgment **[Doc. 17]** be **GRANTED.**

**IT IS SO ORDERED.**

ENTER:

_____ s/ C. Clifford Shirley, Jr. _____
United States Magistrate Judge